STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2021 CA 0240

AMY LEBLANC GOODSON AND WILLIAM R. GOODSON, JR.

VERSUS

CITY OF ZACHARY

Judgment rendered___DEC 1 0 2021___

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. C667741

The Honorable Donald R. Johnson, Judge Presiding

* * * * *

Keith P. Richards                    Attorneys for Plaintiffs/Appellants
Steve J. Moore                       Amy L. Goodson & William R.
Baton Rouge, Louisiana               Goodson, Jr.

Darrell J. Loup                      Attorney for Defendant/Appellee
Baton Rouge, Louisiana               City of Zachary

* * * * *

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

HOLDRIDGE, J.

Plaintiffs, Amy Goodson and William Goodson, Jr., appeal a summary judgment rendered in favor of defendant, the City of Zachary, dismissing this personal injury action. We reverse and remand.

## BACKGROUND

On April 5, 2018, plaintiffs filed this lawsuit against the City of Zachary (City), the owner of a recreational facility known as the Zachary Youth Park Complex (Youth Park), a public recreational facility consisting of, among other things, 10 baseball/softball fields. The City owns and maintains the Youth Park. In the petition, plaintiffs made the following allegations: on April 2, 2017, the Goodsons' son was playing in a championship game at the Youth Park, which began at approximately 7:45 p.m. Light rain began to fall, and spectators were uncertain whether the games would be cancelled. Mrs. Goodson left the spectator bleachers for the field where her son's team was playing and went to the bleachers for an adjacent field to speak with friends. Thereafter, Mrs. Goodson walked back to the stands where she had been sitting. Because the rain continued to fall, she walked close to the stands where there was a metal canopy covering the bleachers, which kept her dry. When she arrived at the rear of the bleachers, Mrs. Goodson tripped over a guy-wire, causing her to fall to the ground.

Regarding the bleachers and canopy structure where Mrs. Goodson fell, plaintiffs alleged the following: The metal canopy rested on four metal support poles which had been erected above the set of bleachers with two of the poles situated near the front, or bottom of the stands, and two of the poles located in the vicinity of the rear, or top of the stands. On the rear side of the canopy, guy-wires were anchored near the two outside edges of the roof-like structure, which were then crossed in a diagonal pattern before being anchored to the two rear canopy support poles at a location approximately six inches above the ground. The

2

distance between the two rear support canopy poles was several feet greater than the width of the seat of the bleachers, resulting in an approximately three-foot wide space between the set of bleachers and the rear canopy support poles on the side of the stands where Mrs. Goodson was walking when the accident occurred.

Plaintiffs alleged the guy-wire over which Mrs. Goodson tripped is a tensioned cable designed to provide additional stability to a free-standing structure and was a constituent of the support system of the metal canopy situated over the set of bleachers. They claimed that the three-foot space between the bleachers and rear canopy support system should have been closed to pedestrian traffic because of the unreasonable risk of harm presented by the guy-wire traversing the space at a height of approximately six to eight inches off the ground. They averred that the City was negligent in numerous respects, including: (1) failing to design or construct a bleacher canopy structure free of vice and defect; (2) failing to hire qualified personnel to design and construct the bleacher canopy structure in accordance with established building standards; (3) failing to install sufficient artificial lighting to ensure adequate illumination of the premises at night; (4) failing to exercise reasonable care in the inspection of its property to identify foreseeable hazards; (5) failing to restrict access by guests to the areas with a known defect; (6) failing to warn guests of the existence of the known vice or defect; and (7) allowing the defect to remain on the property despite having actual notice of its existence prior to Mrs. Goodson's accident. Plaintiffs also asserted causes of action for custodial liability against the City pursuant to La. Civ. Code article 2317 and 2317.1 and La. R.S. 9:2800.

The City filed a motion for summary judgment, urging that La. R.S. 9:2795, Louisiana's Recreational Use Immunity Statute, which affords tort immunity for parks owned by public entities, applied so as to immunize it from liability for

3

plaintiffs' tort claims. In support of the motion, the City submitted the affidavit of its attorney, photographs of the guy-wire, canopy, and bleachers, and excerpts of the depositions of Mrs. Goodson and Robert Morris. The City also filed a supplemental memoranda in support of its motion for summary judgment, attaching an excerpt of a deposition of its representative and attachments thereto regarding financial aspects of the Youth Park.

In its attached memorandum, the City of Zachary argued that it is a public entity which owned and maintained the property where Mrs. Goodson fell for recreational purposes, mainly baseball and softball, triggering the application of the recreational use immunity statute. It argued that none of the exceptions to the statutory immunity afforded to the City by La. R.S. 9:2795 applied in this case. Specifically, the City identified three statutory exceptions to recreational use immunity: (1) actions for injury arising from the willful or malicious failure to warn against a dangerous condition, La. R.S. 9:2795B(1); (2) actions against owners of commercial recreational developments or facilities, La. R.S. 9:2795B(1), and (3) La. R.S. 9:2795E(2)(c), which provides that the limitation of liability afforded to "parks" pursuant to the statute does not apply to playground equipment or "stands" which are defective. According to the City, because Mrs. Goodson's injuries arose from her tripping over a guy-wire that was suspended diagonally across the canopy support structure, and because the canopy structure was in no way attached to or connected to the spectator stands, it did not form a part of the spectator stands, and therefore, La. R.S. 9:2795E(2)(c)'s exception to immunity otherwise afforded to a park for defective stands did not apply.

Plaintiffs amended their petition to add Jelks Construction, LLC (Jelks) as a defendant, alleging that in August of 2013, the City requested and received a proposal from Jelks for the construction by Jelks of eight bleacher canopies at the

4

Youth Park. Jelks completed the construction project on or about June 3, 2015. Plaintiffs alleged that Jelks was negligent in its design in the construction of the bleacher canopy where the accident occurred. They alleged that the defect in the constructed canopy at the accident site was the tensioned guy-wire anchored to the rear canopy support pole approximately six inches above the ground. According to plaintiffs, the presence of the guy-wire created a significant tripping hazard, which should have been removed from the canopy structure by Jelks prior to the completion of the canopy construction project. Plaintiffs alleged that the City failed to ameliorate the risk presented by the trip hazard to spectators by closing the area between the end of the bleachers and the rear support pole to pedestrian traffic.

In opposition to the motion for summary judgment, plaintiffs argued that La. R.S. 9:2795 does not provide the City with immunity for three reasons: (1) Mrs. Goodson was not on the park premises to participate in recreational activity listed in the immunity provision; (2) La. R.S. 9:2795E(2)(c) exempts "stands" which are defective from immunity otherwise provided by the statute, and Mrs. Goodson's injury was caused by a defectively constructed bleacher canopy, which plaintiffs asserted constitutes a part of the stands; and (3) the Youth Park is a "commercial recreational facility" to which recreational immunity provided for in La. R.S. 9:2795 does not extend. In support of their opposition to the motion, plaintiffs submitted the deposition testimony of Mrs. Goodson and the City, as well as the City's discovery responses.

5

Following a hearing, the trial court granted the City's motion for summary judgment and dismissed all of plaintiffs' causes of action against the City with prejudice.[1] This appeal, taken by the Goodsons, followed.

## DISCUSSION

Summary Judgment

After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966A(3). Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. **Collins v. Franciscan Missionaries of Our Lady Health System, Inc.,** 2019-0577 (La. App. 1st Cir. 2/21/20), 298 So.3d 191, 194-95, writ denied, 2020-00480 (La. 6/22/20), 297 So.3d 773. A fact is "material" when its existence or non-existence may be essential to plaintiff's cause of action under the applicable theory of recovery. A material fact is one that would matter at a trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. **Collins,** 298 So.3d at 195.

The Code of Civil Procedure places the burden of proof on the party filing the motion for summary judgment. La. C.C.P. art. 966D(1). The mover can meet this burden by filing supporting documentary evidence, and the mover's supporting

---

[1] We note that the judgment contains a finality certification for the purposes of an immediate appeal pursuant to La. C.C.P. art. 1915. Because the judgment dismissed all of the Goodsons claims against the City with prejudice, the judgment is immediately appealable under La. C.C.P. art. 1915A(1) without the necessity of a finality determination.

documents must prove the essential facts to carry the mover's burden. Thus, in deciding a motion for summary judgment, it must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material factual issues. **Jenkins v. Hernandez**, 2019-0874 (La. App. 1st Cir. 6/3/20), 305 So.3d 365, 370-71, writ denied, 2020-00835 (La. 10/20/20), 303 So.3d 315.

Once the mover demonstrates the absence of factual support for one or more elements essential to the adverse party's claim, the burden shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. **Jenkins**, 305 So.3d at 371. If the non-moving party fails to prove the existence of a genuine issue of material fact, La. C.C.P. art. 966D(1) mandates the granting of the motion for summary judgment. Id.

Recreational Use Immunity

Owners and operators of property that is used for recreational purposes are entitled to immunity from tort liability pursuant to La. R.S. 9:2791 and 9:2795. **Tillman v. Nationwide Mutual Ins. Co.**, 2020-0250 (La. App. 1st Cir. 2/22/21), 321 So.3d 1017, 1023, writ denied, 2021-00429 (La. 5/25/21), 316 So.3d 446.

Louisiana Revised Statute 9:2795 provides immunity to the owner of land being used for recreational purposes against liability for injury to persons caused by a defect in the land, whether naturally occurring or manmade. La. R.S. 9:2795B(1)(c); **Marse v. Red Frog Events, L.L.C.**, 2019-1525 (La. App. 1st Cir. 9/18/2020), 313 So.3d 1001, 1007, writ denied, 2020-01215 (La. 12/22/20), 307 So.3d 1044. La. R.S. 9:2795's immunity expressly applies to parks owned by public entities. The Youth Park is a recreational facility owned by a public entity. It is further undisputed that at the time Mrs. Goodson encountered the guy-wire, a

7

baseball tournament was underway at Youth Park. The term "recreational purposes" is defined in La. R.S. 9:2795A(3) to specifically include summer sports.

However, there are three statutory exceptions to the immunity afforded a public entity such as the City for injuries occurring at recreational facilities they own. The first two are found in Paragraph B of La. R.S. 9:2795. That provision contains an exception for "willful or malicious failure to warn against a dangerous condition" and further expressly provides that recreational use immunity does not extend to the "owner of commercial recreational developments." La. R.S. 9:2795B(1). A third exception is found in Paragraph E of La. R.S. 9:2795. That provision states: "[f]or purposes of the limitation of liability afforded to parks pursuant to this Section this limitation does not apply to playground equipment or stands which are defective." La. R.S. 9:2795E(2)(c).

In this case, we must determine whether the City met its burden on the motion for summary judgment of demonstrating that La. R.S. 9:2795 immunizes it from tort liability to a spectator who tripped over a guy-wire on a canopy support system suspended over a set of bleachers at the City's Youth Park. If there is a genuine issue of material fact regarding the applicability of any of the exceptions to tort immunity contained in La. R.S. 9:2795, the City is not entitled to summary judgment declaring it immune from tort liability pursuant to La. R.S. 9:2795.

Summary Judgment Evidence

In support of its motion, the City submitted the affidavit of John Hopewell, who has been the City's attorney from January 10, 2011, through the present. Mr. Hopewell attested that as the City Attorney, he has access to all records kept by the City in the course of business relating to the Youth Park. Mr. Hopewell examined those records, and he made the following attestations: Construction of the Zachary Youth Park was originally completed in 2013; additions and improvements to the

8

park resulted it in being completed, by 2016, to the level that the Youth Park existed on the date of the accident sued upon (April 2, 2017). At all times since the original completion, the Youth Park has been owned and maintained by the City. The Youth Park is a public recreational facility consisting of 10 baseball and/or softball fields. The bleachers/stands at the Youth Park and shown in various photographs attached to the affidavit were designed, planned, and constructed by Jelks and were put into use in or around August of 2013. The canopy, including the guy-wire attached thereto and shown in photographs attached to the affidavit, was constructed by Jelks in August 2013. The canopy and guy-wire are not connected or attached to the bleachers/stands in any way; instead, the canopy and guy-wire are a totally separate structure from the bleachers/stands. Mr. Hopewell estimated that since the construction of the canopy in 2013, and up until the day of Mrs. Goodson's accident, over 100,000 persons have walked in and through the park area, and there have been no reported accidents involving the canopy or guy-wire other than the accident at issue in this lawsuit.

Mr. Hopewell also attested that the Youth Park is open to the public and is often used by the community for sandlot ball games, without charge. While organized, independent baseball and softball leagues pay to use the park, the Youth Park is not a legal entity nor is it a business association listed with any governmental regulatory body. The City is not required to complete income tax returns and does not pay taxes. According to Mr. Hopewell, while the Youth Park does generate income, its primary purpose is not to derive a profit from its use, but instead to afford the community youth and the community as a whole with the opportunity to participate in wholesome, healthy outdoor recreation.

Photographs offered in connection with the affidavit and later identified as having been taken by Mrs. Goodson or her husband after the accident sued upon,

9

depict the guy-wire attached to a pole at the rear of the stands. In one of the photographs, a person, later identified as Mrs. Goodson, is standing behind the guy-wire. This photograph shows the guy-wire attached on one end to a pole behind the stands; the guy-wire is suspended over the pavement at a height above Mrs. Goodson's ankles, at the level of her shins.

In further support of its motion, the City submitted excerpts of Mrs. Goodson's deposition. Mrs. Goodson acknowledged that the guy-wires and the canopy are connected, but they were not connected to the bleachers. Mrs. Goodson recalled that the bleachers were at the park prior to the addition of the canopy structure. She acknowledged that she and her husband went to the Youth Park and took a series of photographs one week after the accident. She testified that she went to the Youth Park about a month after her accident and took a photograph of the area where she tripped. At that time, the guy-wire was no longer in the same position, but had been "relocated up." Mrs. Goodson stated that the canopy and support poles remained in the same location as they were at the time of her accident.

Additional support for the City's motion included excerpts of the deposition testimony of Robert Morris and the deposition of the City's representatives. In his deposition, Mr. Morris indicated that the cable depicted in the photographs taken by the Goodsons was bracing the awning, but acknowledged that the canopy was not connected to the bleachers. In the City's deposition, its representative testified that for the fiscal year 2016, the park department had an operating loss of $289,000.00, and in the following year, had an operating loss of $208,000.00. The City argued that this evidence demonstrated that the Youth Park was not profitable, establishing that the purpose of the Youth Park is to provide recreational opportunities for the public at large and not to make a profit.

10

In opposition to the motion for summary judgment, the Goodsons urged that there was an issue of material fact precluding the granting of the motion, namely, whether the Youth Park was a commercial recreational facility in the fiscal years prior to and in the year when Mrs. Goodson was injured at that facility. They argued that they had evidence directly contradicting the City's claim that the Youth Park's primary purpose is not to derive a profit from its youth. The Goodsons maintained that they had substantial evidence from the City supporting the conclusion that the Youth Park is a "commercial recreational facility" not entitled to the immunity protections of La. R.S. 9:2795. In support of this claim, the Goodsons relied on social media posts from the City and the Youth Park indicating that youth baseball tournaments held at the facility by a single sponsor have been proven to be profitable, raising tax revenues of $80,000.00 to $150,000.00 each month the tournaments are held. They also pointed to the deposition testimony of the City's Parks and Recreation director in which he refused to repudiate the accuracy of a statement he made to a local newspaper reporter in 2018 indicating that over $80,000.00 in additional revenue was generated for the city per month during two weekend tournaments held per month at the Youth Park.

In further opposition to the motion for summary judgment, the Goodsons argued that the City was not entitled to immunity because Mrs. Goodson was not on the park premises to participate in recreational activity. Additionally, they urged that the "stands" exception to tort liability afforded to parks by La. R.S. 9:2795 applied in this case. According to the Goodsons, the bleacher canopy should be considered part of the facility's bleachers and thus a part of the stands for the purpose of the exception. They urged that the fact that the bleacher canopy was constructed in such a way that it did not contact the stands it covers should not

11

be legally decisive in determining the applicability of the exception for defective stands in this case.

In her deposition, Mrs. Goodson testified that prior to her injury, she had been to the Youth Park three to four times in 2015 and 2016, and recalled that the bleachers were present, but that the canopy and guy-wire structure was built afterwards. She stated that the tournament she attended at the time of her 2017 accident was the first time she saw the canopy and guy-wire structure. She acknowledged that the guy-wire and canopy are connected; however, neither was connected to the bleachers. On the evening in question, Mrs. Goodson's son's baseball team began playing a game around 7:45 p.m. Mrs. Goodson stated that she could not recall if she sat in the bleachers or was sitting in her chair underneath the canopy while watching this game, but that it was raining at the time. At some point, Mrs. Goodson was sitting in her chair under the canopy when she walked over to another field to watch another team play. While there, Mrs. Goodson spoke with a couple as they stood under the canopy over those bleachers to protect them from the rain. Mrs. Goodson then proceeded to walk about 50 feet to the field where her son was playing, when she encountered the guy-wire and tripped over it and fell. Mrs. Goodson stated that she never saw the guy-wire until after the accident, as it was raining and there was poor lighting at the park. Mrs. Goodson identified a series of pictures she and her husband took of the area in question, after her accident. These pictures were submitted by the City in support of its motion for summary judgment. Exhibit B, taken one week after the accident, shows Mrs. Goodson standing behind the guy-wire, which she identified as being in the same level where she struck it. The guy-wire was suspended off of the ground at a height over Mrs. Goodson's ankles near her shins and was connected to the canopy structure. Mrs. Goodson later went out to the Youth Park in May after

12

her accident and took a picture of the area in question, which showed that the guy-wires, but not the canopy structures, had been relocated.

The Goodsons also submitted the deposition testimony of Shane Hebert, the Director of the Parks and Recreation Department for the City since 2011. Mr. Hebert, who oversaw the administration of the Youth Park, contacted Jelks regarding the construction of canopies over the existing bleachers at the park. Mr. Hebert explained that he wanted to cover the bleachers because people had been complaining about how hot it was and there was no shade at the park. Mr. Hebert contacted Jelks, which had done work for Parks and Recreation Department prior thereto, to construct an awning over each set of bleachers. Jelks submitted its proposal for the construction of eve awnings over eight sets of bleachers August 26, 2013. Documentation reflected that Jelks submitted an invoice for the canopy construction project on June 3, 2015, and was paid on June 3, 2015. Mr. Hebert surveyed the construction of the canopies, acknowledging that he considered them to be improvements to the existing structures. According to Mr. Hebert, the dimensions of all of the canopy structures were based on the largest set of bleachers and all of the canopy structures were built to these same specifications, even though some of the bleachers were smaller than others, resulting in the awnings being wider than the bleachers in some instances. Mr. Hebert admitted he left it up to Jelks to make sure that the canopies were built according to existing codes and regulations.

Mr. Hebert was questioned at length regarding various comments he made relating to tax revenues benefitting the City from the construction of turf fields at the Youth Park. In a social media post on Facebook in 2015, Mr. Hebert estimated that the tournaments held at the Youth Park had raised tax revenues from $80,000.00 to $150,000.00 each month the tournaments were held. In his

13

deposition, Mr. Hebert explained that he was referring to taxable sales revenues generated in the City, and not actual tax revenues.

The Goodsons' summary judgment evidence also consisted of the testimony of Deanna Mankins, the City's Chief Financial Officer, and Stephen Nunnery, the Chief Administrator for the City. Their testimony detailed financial aspects relating to the Youth Park, including the budgeting process and financial audits prepared on behalf of the City. Additionally, Mr. Nunnery testified that the erection of the eight bleacher canopies, for which the City paid $30,150.00, was classified as a capital improvement which needed council approval prior to the construction. According to this testimony, the City's Parks and Recreation Department actually had an operating loss of $289,000.00 for the fiscal year ending in June 2016, and for the year ending in June of 2017, it had an operating loss of $208,000.00. The Goodsons submitted the social media post referencing the financial benefit to the City from its Youth Park and an interview with Mr. Hebert conducted by the Morning Advocate in which Mr. Hebert discussed the financial benefits of hosting tournaments at the Youth Park to the City in support of their opposition to the motion.

Upon examining all of the evidence on the motion for summary judgment, we conclude that La. R.S. 9:2795 applies to the City. Without question, the City is entitled to tort immunity for claims made at the Youth Park unless one of the exceptions to the tort immunity statute applies. As the mover on the motion for summary judgment, the City had the burden of proving its entitlement to tort immunity under La. R.S. 9:2795. We find that the City failed to carry that burden because there are genuine issues of fact and law precluding the granting of the motion for summary judgment.

14

Particularly, we find that there exists a genuine issue of material fact as to whether the "stands" exception to recreational use immunity provided for in La. R.S. 9:2795E(2)(c) applies in this case. Louisiana Revised Statute 1:3 mandates that words "shall be read" with their context and "shall be construed according to the common and approved usage of the language." The City offered no evidence as to the generally prevailing meaning of the term "stands" as used in the context of a recreational facility. Further, the City's own evidence demonstrated that the canopy structures were considered improvements to the existing bleachers and were added to the bleachers to address complaints by visitors to the Youth Park that the bleachers were hot and there was no shade to protect them from the sun. The City's only basis for asserting the canopies were not part of the bleachers over which they stood is that the canopies were not permanently attached to the bleacher structures.

However, the City failed to establish that the term "stands" could not be reasonably construed to include the canopies erected over those stands and their attendant structures, which were designed to improve the spectator experience at the Youth Park. Nowhere in the statute or jurisprudence do we find a distinction between the "stands" and a canopy erected above the stands. It would be nonsensical to bar a spectator who is injured while sitting in the stands by a defective piece of a canopy falling on her from filing a tort lawsuit against the City, yet permit that same spectator who is injured because a defective seat to file a lawsuit. Both situations could be interpreted to have occurred in "the stands," and the "stands" exception found in La. R.S. 9:2795 would apply.

Because we find is a genuine issue of material fact as to whether the "stands" exception to the recreational immunity afforded to parks such as the Youth Park in question applies in this case, we pretermit discussion regarding

15

whether any of the other exceptions to recreational use immunity is applicable in this case. We hold that summary judgment decreeing the City immune from liability for the injuries sued upon was improvidently granted.[2] Accordingly, we reverse the summary judgment and remand the case for further proceedings.

## CONCLUSION

For the foregoing reasons, the judgment appealed from is reversed. The case is remanded to the trial court to conduct further proceedings consistent with this opinion. All costs, in the amount of $3,095.50, are assessed to appellee, the City of Zachary.

**REVERSED AND REMANDED.**

---

[2] Nothing in this opinion would preclude the City from filing a new motion for summary judgment with additional evidence or raising other issues or defenses which were not raised in the motion for summary judgment in question.

16